1

2

3

4

5

6

7

FILED

09 MAR 13 PM 2: 26

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                              DEPUTY

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 GENGHIS KHAN ALI STEVENSON, | CASE NO.07-CV-277 W (PCL) |
| 12 | **ORDER ADOPTING REPORT** |
| 13                              Plaintiff, | **AND RECOMMENDATION AND** |
|    vs. | **GRANTING DEFENDANTS'** |
| 14 | **SUMMARY-JUDGMENT** |
| 15 D. HARMON, et al., | **MOTION** |
| 16 | |
| 17                              Defendants. | |
| 18 | |

19          Plaintiff Genghis Khan Ali Stevenson, a California prisoner proceeding *pro se*,

20    filed this civil rights lawsuit alleging excessive force and failure to protect Plaintiff from

21    imminent harm.  On April 14, 2008, Defendants filed a summary-judgment motion.

22    Plaintiff opposed the motion, and on November 25, 2008, United States Magistrate

23    Judge Peter C. Lewis issued a Report and Recommendation ("Report"), recommending

24    that the Court grant Defendants' motion.  On February 17, 2009, Plaintiff filed

25    objections to the Report. Additionally, Plaintiff has filed a motion for sanctions against

26    Defendants.

27          The Court decides the matters on the papers submitted and without oral

28    argument.  See Civ. L.R.7.1.(d.1).  For the reasons outlined below, the Court

                                        -1-                                   07cv277

1 **ADOPTS** the Report (Doc. No. 66) and **GRANTS** Defendants' summary-judgment

2 motion (Doc. No. 44).   Additionally, the Court **DENIES** Plaintiff's motion for

3 sanctions.  (Doc. No. 73.)

4

5 I.   BACKGROUND

6       The following factual background is taken from the Report, and is based primarily

7 on Plaintiff's statements in the complaint and attached exhibits, and during his

8 deposition.[1]

9       In June 2006, Plaintiff was housed in the Administrative Segregation Unit

10 ("ASU") at Calipatria State Prison. (*Comp.* [Doc. No. 1], at 3.)  Defendants Harmon,

11 Williams, and Rush were correctional officers assigned to the ASU. (*Rush Dec.* [Doc.

12 No. 44-8], ¶1.)   Defendant Velasco was a Sergeant, and supervised Defendants

13 Harmon, Williams, and Rush. (*Velasco Dec.* [Doc. No. 44-5], ¶2.)

14       On June 11, 2006, at approximately 8:00 a.m., Defendants Harmon and Williams

15 approached Plaintiff's cell during the shower program.  (*Comp.*, at 3, Ex. A at 1.)

16 Plaintiff's cellmate stated that he would take a shower; Plaintiff stated that he would

17 not. (*Id.*)  In accordance with prison rules and protocol, both inmates were handcuffed

18 before the cell door was opened and stood facing the back of the cell. (*Id.*, Ex. A at 3.)

19 Defendant Williams then escorted Plaintiff's cellmate out of the cell to the showers.

20 (*Id.*)

21       As the cell door began to close, Defendant Harmon directed the tower officer to

22 keep the door open. (*Comp.*, at 3, Ex. A at 3.)  Plaintiff then turned toward Defendant

23 Harmon, who instructed Plaintiff to exit the cell. (*Hixson Dec.* [Doc. No. 44-3], Ex. A

24 [Plf.'s Depo. Transcript] at 25:8–13.[2])  Rather than comply with the order, Plaintiff

25

26 ─────────────────

27 [1]Defendants version of events differs from Plaintiff's version.  However, because the
Court is being asked to rule on Defendants' summary-judgment motion, the Court must assume
the truth of Plaintiff's version.

28
[2]References to Plaintiff's deposition transcript are to the transcript's actual page number.

1  questioned Defendant Harmon, who then informed Plaintiff that he was going to
2  conduct a cell search. (*Id.*) In response, Plaintiff again questioned Defendant Harmon,
3  who then entered the cell. (*Id.* at 27:1–7.) Plaintiff shouted an expletive at Defendant
4  Harmon (*Perez Dec.* [Doc. No. 56-6] at 2), who then grabbed Plaintiff's left arm and
5  attempted to pull him out of the cell (*Hixson Dec.*, Ex. A at 28:15–16). Plaintiff pulled
6  away from Defendant Harmon, who then allegedly struck Plaintiff's mid section with
7  the back of his forearm. (*Id.* at 28:17–18, 29:5–9.) Plaintiff then bent over and
8  Defendant Harmon wrestled him to the ground, locking his handcuffs tighter behind
9  his back. (*Comp.*, at Ex. A at 3.)

10  Upon hearing the commotion, Defendants Williams and Rush went to the cell
11  and assisted Defendant Harmon in subduing Plaintiff. (*Williams Dec.* [Doc. No. 44-7],
12  ¶ 8; *Harmon Dec.* [Doc. No. 44-6], ¶¶ 8–9; *Comp.*, Ex. A at 3.) Plaintiff was then taken
13  to a holding cell to await a medical evaluation. (*Harmon Dec.*, ¶¶ 8–9.)

14  Medical Technical Assistant (MTA) Bell evaluated Plaintiff. (*Comp.*, Ex. B at
15  1.) During the evaluation, Plaintiff stated that "[he] got beat up." (*Id.*) MTA Bell
16  noted some dry skin on the left side of Plaintiff's face, and found Plaintiff's pupils were
17  equal and reactive to light, indicating the absence of head trauma. (*Bell Dec.* [Doc. No.
18  44-4], ¶ 7.) There were no other injuries observed. (*Id.*)

19  As Plaintiff was being escorted back to his cell by Defendants Velasco and Rush,
20  Plaintiff told Defendant Velasco that he had cuts on his wrist that MTA Bell failed to
21  notice, and thus needed to return to the clinic. (*Hixson Dec.*, Ex. A at 94:13–14.)
22  Defendant Velasco responded that MTA Bell would be sent to Plaintiff's cell to perform
23  another evaluation. (*Id.* at 94:14–21.) Plaintiff, however, refused to proceed towards
24  his cell, and immediately stopped and turned toward the direction of the medical office.
25  (*Id.* at 106:14–107:10.) Within seconds, Plaintiff alleges he was tackled by Defendant
26  Harmon. (*Id.* at 106:3–24.)

27  Plaintiff was taken to another holding cell and seen by MTA Bell. (*Velasco Dec.*
28  [Doc. No. 44-5], ¶ 12.) MTA Bell noted "superficial abrasions to [Plaintiff's] bilateral

07cv277

1   wrists," a "superficial abrasion to [the] left knee" and a "small bump" on the right side
2   of Plaintiff's forehead.  (*Comp.*, Ex. B-2.)
3          On February 9, 2007, Plaintiff filed this lawsuit.  (Doc. No. 1.)  On April 14,
4   2008, Defendants filed the pending summary-judgment motion.  After obtaining an
5   extension of time, Plaintiff filed an opposition on June 5, 2008, *nunc pro tunc* to May 30,
6   2008.  (Doc. No. 49.)  However, on June 13, 2008, Magistrate Judge Lewis provided a
7   *Klingele/Rand* notice and permitted Plaintiff to file a supplemental opposition. (Doc No.
8   59.)  On July 14, 2008, Plaintiff filed a supplemental opposition, and on July 28, 2008,
9   Defendants filed their reply.
10         On November 25, 2008, Magistrate Judge Lewis issued the Report,
11   recommending that the Court grant Defendants' motion.  (Doc. No. 66.)  The Report
12   also ordered that any objections were to be filed by December 17, 2008, and any replies
13   filed by December 31, 2008.
14         On December 22, 2008, Plaintiff filed a motion for sanctions against Defendants.
15   (Doc. No. 73.)  On February 17, 2009, pursuant to this Court's order granting an
16   extension to file objections, Plaintiff filed an objection to the Report.  (Doc. No. 76.)
17   Defendants did not file a reply.
18
19   II.   LEGAL STANDARD
20         The duties of the district court in connection with a magistrate judge's report and
21   recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and
22   28 U.S.C. § 636(b)(1).  The district court "must make a de novo determination of those
23   portions of the report ... to which objection is made," and "may accept, reject, or
24   modify, in whole or in part, the findings or recommendations made by the magistrate."
25   28 U.S.C. § 636(b)(1)(C); see also United States v. Raddatz, 447 U.S. 667, 676 (1980);
26   United States v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989).
27   //
28

1 III. ANALYSIS

2     Having read and considered the papers submitted, including Plaintiff's objections
3 to the Report, the Court concludes the Report presents a well-reasoned analysis of the
4 issues.  The Report correctly concluded that based on the undisputed material facts,
5 Defendants are entitled to summary judgment.

6

7     A.   **Summary Judgment Standard.**

8     Summary judgment is appropriate under Rule 56(c) where the moving party
9 demonstrates the absence of a genuine issue of material fact and is entitled to judgment
10 as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317,
11 322 (1986).  A fact is material when, under the governing substantive law, it could
12 affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49
13 (1986).  Summary judgment should be entered against a party if there is insufficient
14 evidence to establish the existence of an essential element of a party's case.  Celotex,
15 477 U.S. at 322.

16     Where a plaintiff is *pro se* in a civil rights case, the court must be careful to
17 construe the pleadings liberally and afford plaintiff any benefit of the doubt.  See Karim-
18 Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  However, at
19 a minimum, even a *pro se* plaintiff must allege with at least some degree of particularity
20 overt acts which defendants engaged in that support his claim.  Jones v. Community
21 Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984).

22     Under Section 1983, a claim exists only when a plaintiff alleges that: (1) the
23 defendant(s) acted under color of state law, and (2) the defendant(s) deprived him of
24 rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442
25 F.3d 1178, 1185 (9th Cir. 2006).  Plaintiff alleges use of excessive force by Defendants
26 Harmon, Williams, and Rush in violation of his Eighth Amendment rights, and failure
27 to protect him from the other named defendants against Defendant Velasco in violation
28 of his Fourteenth Amendment right to due process and equal protection.

07cv277

**B.    Plaintiff's Excessive Force Claim.**

For an excessive force claim, the issue is whether the defendant applied force in a good faith effort to maintain or restore discipline, or instead, did so maliciously and sadistically for the purpose of causing harm.  Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).   Five factors, set out in Hudson, inform this determination: (1) the need for application of force, (2) the relationship between the need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to temper the severity of the forceful response, and (5) the extent of injury suffered by an inmate. 503 U.S. at 7 (citing to Whitely v. Albers, 475 U.S. 312, 321 (1986)).  Further, there must be a showing of improper motive on behalf of the defendant using "specific, nonconclusory factual allegations." Crawford-El v. Britton, 523 U.S. 574, 598 (quoting Siegert v. Gilley, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)); Jeffers v. Gomez, 267 F.3d 895, 911 (9th Cir. 2001).

Plaintiff alleges two separate incidents of excessive force: first, when he was removed from his cell; and second, when he refused to return to his cell after the first medical examination.  The Report concluded that the force used by Defendants was reasonable, and did not violate Plaintiff's Eight Amendment rights because Plaintiff failed to offer specific facts and/or nonconclusory allegations that show Defendants Harmon, Williams and Rush were sadistic and malicious in their use of force. (Report [Doc. No. 66], at 8.)

In his objection, Plaintiff contends that there are numerous disputed issues of fact, and summary judgment must therefore be denied.  But as demonstrated below, even accepting as true Plaintiff's version of events, the Court agrees with the Report's conclusion.

With respect to the first incident, statements from Plaintiff and his witnesses establish the following:

07cv277

- Defendant Harmon lawfully ordered Plaintiff to exit his cell for a search. (*Hixson Dec.* [Doc. No. 44-3], Ex. A [Plf.'s Depo. Transcript] at 25:10–18.)

- Rather than exit the cell, Plaintiff began to question Defendant Harmon's orders. (*Id.* at 26:20–27:1.)

- Plaintiff also resisted Defendant Harmon's attempt to remove Plaintiff from the cell. When Defendant Harmon entered the cell and grabbed Plaintiff's arm, Plaintiff pulled away. (*Id.* at 28:15–18; 29:5–9.)

- In addition to refusing to obey Defendant Harmon's orders, Plaintiff directed an expletive at Defendant Harmon. (*Perez Dec.* [Doc. No. 56-6], at 2.)

- Plaintiff was struck in his midsection and tackled *after* refusing the lawful order to exit the cell and resisting Defendant Harmon's attempt to remove Plaintiff. (*Comp.* [Doc. No. 1], Ex. A at 3.)

Finally, there is also no dispute that the only injury that MTA Bell observed was dry skin on the left side of Plaintiff's face. (*Bell Dec.* [Doc. No. 44-4], ¶ 7.)

As the Report noted, it "is well settled that when confronted with a disturbance, prison guards are permitted to use reasonable force to restore order within the prison and prevent a threat to prison workers, administrators, visitors and other inmates." (*Report* [Doc No. 66], at 10, citing <u>Hudson</u>, 503 U.S. at 3.) The undisputed facts establish that when ordered to exit his cell, Plaintiff began arguing with Defendant Harmon, and then became combative when Defendant Harmon grabbed Plaintiff's arm to remove him from the cell. Under these circumstances, the Court finds that Defendants reasonably perceived that Plaintiff posed a threat, that the use of force was justified, that the amount of force used was reasonable, and that the extent of Plaintiff's injury was minimal. Moreover, the Court agrees with the Report's conclusion that there is no evidence in the record suggesting that Defendants acted with improper motive. In short, under the <u>Hudson</u> factors, Defendants did not use excessive force during the first incident.

07cv277

1    The second incident is similar to the first in that it was precipitated by Plaintiff's
2  refusal to obey lawful orders from the Defendant officers.  There is no dispute that while
3  Plaintiff was being escorted back from the medical examination, he again refused to
4  comply with the officer's order to proceed to his cell.  (*Hixson Dec.*, Ex. A at
5  106:14–107:10.) Specifically, after being told that a second medical examination would
6  be conducted at his cell, Plaintiff stopped and turned back towards the medical unit
7  without being given permission to do so.  Plaintiff's refusal to follow the officer's
8  directives, particularly given his earlier disobedience, again created a need for the use
9  of some force "to maintain or restore discipline." See White v. Roper, 901 F.2d 1501,
10  1507 (9th Cir. 1990) (concluding that need to use force to restrain and subdue pretrial
11  detainee was created by detainee's refusal to enter and move away from assigned cell).
12
13    Because corrections officers must balance the need to "maintain and restore
14  discipline" through force against the risk of injury to inmates, correction officers "should
15  be accorded wide-ranging deference in the adoption and execution of policies and
16  practices that in their judgment are needed to preserve internal order and discipline and
17  to maintain institutional security."  Whitely, 475 U.S. at 321.  Under the
18  circumstances, the Court finds that Defendants reasonably perceived that Plaintiff
19  posed a threat, that the use of force was justified, that the amount of force used was
20  reasonable, and that the extent of Plaintiff's injury was minimal.  Moreover, the Court
21  agrees with the Report's conclusion that there is no evidence in the record suggesting
22  that with regard to the second incident, Defendants acted with improper motive.  In
23  short, under the Hudson factors, Defendants did not use excessive force during the
24  second incident.
25
26  C.    **Plaintiff's "Failure to Protect" Claim.**
27    Plaintiff does not dispute the Report's conclusion that his allegations actually
28  raise a "Failure to Protect" claim under the Eighth Amendment, rather than a

07cv277

1  Fourteenth Amendment claim.  Accordingly, this Court will analyze the failure to

2  protect claim.

3      The Eighth Amendment requires prison officials to take reasonable measures to

4  protect inmates from serious risks to their health and safety.  Farmer v. Brennan, 511

5  U.S. 825, 837 (1970); Helling v. McKinney, 509 U.S. 25, 33-34 (1993). To be culpable,

6  a prison official must demonstrate a state of mind of "deliberate indifference." Farmer,

7  511 U.S. at 834.  The "deliberate indifference" standard requires a prison official to

8  have an actual, subjective knowledge of an excessive risk of harm to the prisoner's

9  safety and fail to prevent it.  Id. at 837-39.  This failure must also result in the "denial

10 of 'the minimal civilized measures of life's necessities.'" Id. at 834. Although a prison

11 official may actually know of a substantial risk to inmate health and safety, he is free

12 from liability if he responded reasonably to the risk.  Id. at 844.

13     Plaintiff's objection surrounds the fact that Defendant Velasco denies ever

14 having been informed of the first incident by Plaintiff.  (Pl. Objections [Doc. No. 76],

15 at 14-15.)  Assuming, as the Report did, that Plaintiff has established Defendant

16 Velasco's knowledge of the first incident, the undisputed facts nevertheless establish

17 that Defendant Velasco acted reasonably in response to that risk.

18     Plaintiff admits that Defendant Velasco dismissed Defendants Harmon and

19 Williams from the area after Plaintiff told him about the first incident.  (Comp., at 4;

20 see also Pl. Objections, at 17.)  In doing so, Defendant Velasco acted to alleviate

21 Plaintiff's fears and Plaintiff has provided no evidence to the contrary.  Accordingly,

22 Defendants are entitled to summary judgment on this claim as well.

23

24 IV.  CONCLUSION

25     Plaintiff objects to the Report on the basis that there are numerous disputed

26 issues of fact. As addressed above, Plaintiff's objection lacks merit. Accordingly, for the

27 reasons addressed above, the Court ADOPTS the reasoning and findings contained in

28

-9-

07cv277

1  the Report (Doc. No. 66), which are incorporated herein by reference, and **GRANTS**

2  Defendants' summary-judgment motion (Doc. No. 44).

3        Additionally, having reviewed Plaintiff's motion for sanctions, the Court finds

4  that, contrary to Plaintiff's contention, he was timely served with Defendants' reply to

5  the supplemental opposition.  (*See Certificate of Service* [Doc. No. 63].)  Accordingly,

6  Plaintiff's motion is **DENIED**.  (Doc. No. 73.)

7        The Clerk of Court shall close the district court case file.

8

9  **IT IS SO ORDERED.**

10

11  **DATED: March 13, 2009**

12

HON. THOMAS J. WHELAN

13  United States District Court
Southern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv277